PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SEAN SWAIN, ) | |
|  ) | CASE NO. 4:14cv2074 |
| Plaintiff, ) | |
|  ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
|  ) | |
| GARY C. MOHR, *et al.*, ) | |
|  ) | **MEMORANDUM OF OPINION AND** |
| Defendants. ) | **ORDER** [Resolving ECF No. 19] |

The within matter came on for hearing upon Plaintiffs' Motion for Temporary Restraining Order (ECF No. 19).

After notice to the parties, the Court held a hearing on the motion. The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. The Court has also considered the oral arguments of counsel.

Four factors are important in determining whether a temporary restraining order is appropriate: (1) the likelihood of the plaintiff's success on the merits, (2) whether the injunction will save the plaintiff from irreparable injury, (3) whether the injunction would harm others, and (4) whether the public interest would be served by the injunction. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985). The consideration given these factors is a flexible one and the factors are not prerequisites to be met, but must be balanced. *Id.* at 1229. In balancing the four considerations applicable to temporary restraining order decisions, the Court holds that

(4:14cv2074)

equitable relief is not appropriate.[1]

Plaintiff is unlikely to succeed on the merits of his claim that Defendants retaliated against his exercise of free speech by restricting his access to Video Visitations. To successfully state a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must show that (1) he engaged in protected conduct, (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) there is a causal connection between the protected conduct and the adverse action. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). In order to show causation, a plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's conduct, and (2) the conduct was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id.* at 695 (quoting *Thaddeus-X*, 175 F.3d at 386).

Neither Plaintiff's identification of Defendant Tibbals' license plate in his website nor his "campaign pledge" to burn down the Ohio Statehouse are protected conduct. Contrary to Plaintiff's assertions, neither comment is the type of political speech for which the First Amendment offers protection, robust or otherwise. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346–47 (1995) (discussing the longstanding principle that political speech is at the core

---

[1] During oral arguments, Plaintiff withdrew his request for a temporary restraining order as based on any alleged nefarious purpose for the diagnosis that caused his transfer to the infirmary and the medical treatment Plaintiff received while there. Accordingly, the Order will focus on Plaintiff's allegations that he lost Video Visitation privileges in response to two comments he had made in articles posted to his personal website.

2

(4:14cv2074)

of First Amendment protection). Amplifying sensitive identifying information of an Ohio Department of Rehabilitation and Correction official, or promising destructive action of a government facility, is different from the right to criticize public officials. *See Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975) ("The right of an American citizen to criticize public officials and policies and to advocate *peacefully* ideas for change is 'the central meaning of the First Amendment.'" (quoting *New York Times v. Sullivan*, 376 U.S. 254, 273 (1964))) (emphasis added). Regardless of how Plaintiff has expressed himself, be it through emails, in-person conversation, or Video Visitations, his incendiary speech does not fall within the ambit of the First Amendment's protection. Nor can Plaintiff show causation. Plaintiff argues that the fact that he is the only inmate in the Ohio prison system without access to Video Visitations is indicative of retaliatory motive. Uniqueness, without more, is not evidence of retaliation. The singular treatment Plaintiff complains of is equally reflective of the unique security threats he poses to ODRC. Without a showing of protected conduct or causation, Plaintiff cannot demonstrate a likelihood of success on the merits of his First Amendment retaliation claim.

Plaintiff has also failed to demonstrate irreparable harm caused by Defendants' decision to limit Plaintiff's access to Video Visitations. Plaintiff concedes the restriction on his use of Video Visitations is the only restriction that Defendants had imposed on his ability to communicate with people outside of prison. ECF No. 30 at 3. Plaintiff may still receive visitors, place phone calls through JPay, and use mail privileges unhindered by Defendants' current restriction. *Id.* Inmates do not have a constitutional right to any specific manner of

(4:14cv2074)

communication.  See *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (stating that inmates do not have a right to unlimited telephone use); *Bristow v. Amber*, 2012 WL 1758570, at *2 (S.D. Ohio May 16, 2012), *report and recommendation adopted*, 2012 WL 1963577 (S.D. Ohio May 31, 2012) (collecting cases in which courts rejected the argument that the First Amendment requires prison officials to provide inmates with access to email communication); *see also Holloway v. Magness*, 2011 WL 204891, at *7 (E.D. Ark. Jan. 21, 2011), *aff'd*, 666 F.3d 1076 (8th Cir. 2012) (holding that the First Amendment does not require "that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances").  Plaintiff may have been restricted from using a desirable method of communication, but the law does not require Defendants to provide inmates with their preferred mode of communication.  Irreparable injury has not been shown.

An injunction would harm others in this case.  The relief sought by Plaintiff hampers Defendants' day-to-day operations of correctional facilities.  Prison officials monitor other forms of inmate communication, including regular mail, in-person visits, phone calls, and electronic mail.  An injunction would undermine Defendants' ability to perform a similar screening for Plaintiff's Video Visitations, which could in turn pose a threat to the security of the correctional institutions, inmates, or correctional employees.  See *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979) (recognizing that courts should give deference to a prison administrator's judgment that a regulation is "to preserve internal order and discipline and to maintain institutional security").

(4:14cv2074)

The injunction's consequence could also create a "ripple effect" harming other inmates. Plaintiff is not the only inmate who benefits from Video Visitations. If ODRC determines that the injunction hinders its ability to provide Video Visitations while performing an adequate screen for security threats, and eliminates Video Visitations as a result, the other inmates who would utilize Video Visitations would be harmed by its elimination. *See* Turner v. Safley, 482 U.S. 78, 92 (1987) (deferring to correctional officials' expertise in matters which involve a tradeoff between an inmate's asserted right and the liberty and safety cost to others). In either event, the injunction would cause harm to another party.

      The public interest would not be served by the injunction. Plaintiff's argument that the public has an interest in hearing his speech is significantly outweighed by the public's interests in maintaining operational state correctional facilities. *See* Blair v. Loomis, 1 F. Supp. 2d 769, 773 (N.D. Ohio 1998) (holding that the public's interest "in a safe and orderly prison system" outweighs an inmate's interest in spousal visitation rights when corrections officials denied plaintiff's wife visitation privileges when she falsified information on her visitor application). What little informational value the public derives from the dissemination of a warden's license plate—a dubious proposition at best—is severely offset by the potential ramifications of the dissemination. Widely dissemination identifying information of an ODRC employee aids those of a mind to perform badly and threatens the ability of the state to provide safety to its employees operating correctional facilities.

(4:14cv2074)

Taken together, the factors weighs against imposing a temporary restraining order against Defendants. Plaintiff's Motion for Temporary Restraining Order (ECF No. 19) is denied.

IT IS SO ORDERED.

| | |
|---|---|
| March 17, 2015 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |